The Court calls 518-0577 Sproull et al. v. State Farm & Casualty Co. Thank you. I apologize. No problem. Joe Cancilla on behalf of Defendant Appellate State Farm in this Rule 308 appeal. State Farm submits that the certified question in this case should certainly be answered in the affirmative by Your Honors. That question, where Illinois insurance regulations provide that actual cash value or ACV of an insured damage structure is determined as replacement cost of property at time of loss, less depreciation if any, and the policy itself does not actually define actual cash value, may the insurer depreciate all components of replacement cost, including labor, in calculating ACV. This substantive legal issue is being addressed across the country. It's an important issue. It's a matter of first impression before this Court. Similar questions on appeal have been addressed by five state Supreme Courts, with a sixth state Supreme Court pending, and a number of federal appellate courts and district courts across the land. My plan for this morning, subject, of course, to responding to your all questions, is to briefly identify the operative language of the policy and then cover two major points, which in our view compel an answer of yes to the certified question. I'm sorry to interrupt you. I'm very concerned about the procedural posture of this case, because the trial court entered an order of February 26, 2018, and it found that the term actual cash value was ambiguous. Do you agree with that? The order entered by the court did so hold, yes. But the certified question says, where Illinois insurance regulations provide that the actual cash value or ACV of an insured, if the court has already found that as ambiguous, how are we to answer this question? Well, the court in finding the term actual cash value ambiguous didn't consider appropriately what defines the term actual cash value. That term is defined as a legal term of art by the regulation itself, as well as by a century of Illinois jurisprudence. So the question, we believe, appropriately addresses the broad circumstance of an insurer not defining that term, but it being a term of art in Illinois, both by common law and by the regulation itself. But are you asking us then, I mean, if we would answer this question yes or no regardless, are we then vacating the February 26 order that found as a matter of law that the term was ambiguous? I think if you rule and answer the questions in the affirmative and would remand the case to the Madison County Court with instructions to follow that decision, the judge would reassess. I'm sure the judge would reassess. Well, we have two. The trial court's decision was a de novo decision. So, see, what I'm worried about is we're doing an end around the way this question is phrased. In other words, are we really reconsidering Judge Mudge's order as to whether or not actual cash value is an ambiguous or unambiguous term? State Farm wants to argue it's clear, right? But he's already ruled it's not clear. And yet we're not here on an appeal to vacate that order. Well, we're here on an appeal on a certified question. That's a de novo review also. It is, yes, yes. So I'm wondering how we do a de novo review on a term, actual cash value, that's already been determined as a matter of law to be ambiguous. Well, it has broad application beyond State Farm's policy itself. And the judge very carefully considered a range of potential questions to pose. And made many findings. And landed on this as the appropriate question to certify. And we made the request for that question to be addressed. Initially, Your Honors, declined to accept the Rule 308 question. Upon a supervisory order, the Illinois Supreme Court directed that the question be answered. So we believe it is in the correct posture. Do you agree that the only dispute here is the depreciation of labor issue? Is this a narrow issue? I mean, I saw in the pleadings where everybody seemed to agree that you could depreciate the shingles, the property, the tangible property, if you will. Presently, that is the theory that is being asserted by plaintiffs, that it's limited to the depreciation of labor as to what they challenge. And what is State Farm's position? That, that. It goes beyond labor? Well, at times it floats beyond labor. At times it floats to anything other than materials. So, you know. Well, I saw in some of the cases it could be taxes. Right, right, right. And in this case, it's only labor? Well, it's fluid. I don't know that it is necessarily only labor. It's kind of the theory of the day as to what is being challenged. Okay. So in our view, both the clear language of the provision, which governs the claims here, contemplates depreciation of all replacement costs. And in our view, the language of the policy itself, as well as fairness and indemnity principles, also compel an affirmative answer to the challenge questions. The operative language of the policy is contained at the record at 255. The key language that's challenged here is the obligation to pay ACB, but it's important to look at the entire policy in context. It's a two-step loss settlement provision. The policy provides that State Farm will settle each loss by paying the insurer up to the cost of repair, but that comes in two installments. First, the payment obligation is actual cash value, and then if repairs occur and when they occur and are completed, full replacement cost benefits are then paid. Now, that is a very common two-step loss settlement provision. It's been confirmed as being appropriate under several Illinois cases, including, among others, Cary, National Tea Company, Little. So that's been confirmed. And what's clear under those two-step policies is full replacement cost, whether it's for materials, whether it's for labor, full replacement cost only becomes due when the repairs are completed. Now, that two-step loss settlement provision has actually been deemed to be unambiguous under Illinois law. Both the Cary case and the Little case still hold in enforcing those kinds of provisions. So what does the ACB mean then? Well, it's not defined in the policy. That's certainly the case. But that's not unusual, and it doesn't create ambiguity. The Illinois standard fire policy itself, Illinois standard policy, uses the term actual cash value and does not define the term. That's not a problem here because the term is defined under Illinois law. A century of case law, which we've identified, has identified the term to mean replacement cost minus depreciation. The regulation itself promulgated a couple decades ago also expressly defines what ACB is. Well, I guess the real issue is what is depreciation? What can or cannot be depreciated under actual cash value, right? I'm not sure if that's the real issue or the only issue. It is one of the issues embedded in this certified question. Well, if the Illinois standard policy defines actual cash value as replacement cost minus depreciation, as you just said, then what else is there besides the issue of depreciation? I think the standard policy just uses the term ACB and doesn't define actual cash value one way or the other. I'm misunderstood. In the State Farm's position, then, the actual cash value is defined as, even though it's not defined in the policy, that the case law indicates it's replacement cost minus depreciation. Correct, correct. So if depreciation is not the kind of narrow issue here, what else is there to a determination of ACB? The question would be what is replacement cost? Because the case law says ACB equals replacement cost minus depreciation. The regulation says the ACB means replacement cost minus depreciation. So what's embedded in replacement cost against which an unqualified, unlimited, no exceptions, word depreciation is applied? And that's a significant consideration here. That's the way a number of these cases have gone when they've had challenges. I was just looking at Tolar this morning, for example, which is out of a district court in Texas interpreting Texas law, and that's the way the judge there looked at the law. But in those cases that State Farm's relying on, and it seems that the trial court used this reasoning, there wasn't a question of ambiguity on actual cash value. In other words, the courts determined that actual cash value was defined in the policy somehow. So there wasn't this question of ambiguity. That seems to be the distinction between your line of cases and the plaintiff's line of cases. Is that wrong? I think that's wrong. I do think that's wrong. Well, for example, the Redcorn case, you know, was a case that didn't have a definition of ACB. What did the court find? Did the court find that it was unambiguous because it did define ACB? They found it was unambiguous because the term was appropriately applied under Oklahoma law, you know, to include both materials and labor, and there they looked at the integrated whole of a roof and didn't distinguish between the elements. Wilcox in Minnesota is also a case that found no ambiguity. Paparello in Pennsylvania, a federal district court there, found no ambiguity. So it's not an isolated occurrence. Were the regulations in those cases the same as in Illinois? So there weren't regulations in those cases, but the conclusion reached by the courts, I believe that's the case in Oklahoma, Minnesota, and Pennsylvania, the conclusion reached by the court was the term ACB itself, never mind whether or not there's a regulation to, was unambiguous. So I don't believe there was a regulation in those cases. What is your position on the section 91988 provision where the very last line says that a detailing any and all deductions for depreciation, including but not necessarily limited to the age, condition, and expected life of the property. Do you think that the property somehow modifies the word deductions for depreciation? Well, I think it's speaking to and providing an estimate that indicates how the depreciation was calculated by providing information as to the age, condition, and expected life of the property. But it uses the word property as opposed to expected life of the property and any other losses or deductions. It doesn't include the word labor, for example, taxes, or intangibles. Oh, no, I would disagree with that, Your Honor. I mean, it includes property, which means the roof. So the elements that went into the construction of that roof and the value of that roof when it was built included the materials, the labor, the sales tax on the shingles, the general contractor overhead and profit. It included all those things. That was the integrated whole of that property. And then the assessment of the age or condition of that property, maybe it's a 10-year-old roof and 20-year shingles, that information needs to be supplied to the policyholder so that the policyholder understands the basis for which the depreciation was applied. Section 919.80 is under the heading required claim practices. Required claim practices. And one of those required claim practices under the regulation is insurers, quote, shall determine actual cash value, close quote, on how they should determine that, on residential structural policies. And what they say is that must be replacement cost of property at time of loss, less depreciation if any. That's the term they use. There's nothing ambiguous about that regulation. Replacement cost, everybody understands what all goes into replacing a structure. Depreciation, we would submit, is not ambiguous either. But it has no exceptions, no qualifications. It doesn't say any depreciation for material but not by the way labor or any other intangible cost. It doesn't say that. Now, the fact that it's a regulation is significant here, and the fact that the term is defined by regulation is significant. Where is the term defined by regulation? I need to see that. Where are you citing to? Are you looking at 919 again? Yes. The term ACB is defined by regulation. Okay. It doesn't include, the only place the word depreciation is used is in the line I read to you. No, I mean it's in the preceding line too, isn't it, Your Honor, when it actually states how ACB is to be calculated. Replacement cost of property at time of loss, less depreciation if any. And then there's this last sentence that, that's what I was asking you about. If you've got depreciation if any, you have like a modifying sentence that says, oh, and if the insurer disagrees, you've got to give them a written estimate. Yeah. So that's why I was asking if this modifies that prior sentence about the word property because clearly, you know, when we, it seems like when you insure something, that property has value, a house, a roof, whatever. And then as things age, we all depreciate. Yes. As you and I both know. But that's why I was asking about this limiting sentence. It doesn't seem to include the whole labor axis. I wouldn't view that as a limitation. I would view that as a requirement, you know, of what needs to be supplied to the insured. If, you know, that information should be provided. That's an additional item. I don't view it as any kind of modifier because it actually says age, condition, and expected life of the property as well. So that refers back to the actual cash value of the damaged property again. I commend the Papparello case to your honors because that case deals with this issue of what is that property? What does that mean, depreciation of the property? And it turns largely on that question. I have a question about this exact estimates. The appellee mentioned that the default settings did not take out labor and that they had to actually be changed in order to depreciate out the labor. So can you explain that? The exact mate is just an estimating software. You know, it comes off the shelf and an insurer can set that software any way they want. One of the aspects of the application is that the vendor enables one to check whatever boxes you want to apply depreciation to. All that is is a product that comes off the shelf that is a flexible tool that insurers can use as they choose to. But the default settings, as I understand it, did not include labor. Well, default settings is a misnomer, I believe. I don't really know that it has default settings as much as it has an ability to check whatever you want. Okay. So the exact mate, if you ask them, I don't think they would ever say, this is a default setting. They'd say, hey, we have a robust tool and you can check whatever boxes you want. We're not suggesting one or the other. Here's the tool. Here's how you use the tool. Okay. But the plaintiff's tool is that State Farm is one of the few in the state of Illinois that checked that box. Yeah. Other people using the system don't check the box. I know that. I know that. Go ahead. I know that's sad. And there's the suggestion that State Farm is rogue in some manner, you know. But just look at the case law and this stuff. Look at the number of carriers that have been, you know, sued on this theory. Look at their own industry literature that they submitted in terms of what that industry literature characterizes as industry practice. It's standard. It's standard stuff. Thank you, Mr. Kinsella. Thank you. Thank you. Thank you. Good morning, everyone. My name is Joe Snodgrass from Larson King in St. Paul, and I represent Jared Spruill in this case. I wanted to start by just taking two minutes on something that's often overlooked, and that's what standards are we applying when we're dealing with ambiguity. We all know if it's ambiguous, the policyholder is supposed to win. But drilling down a little bit further because this case deals with ambiguity, remember here State Farm's burden isn't just to prove that its interpretation is persuasive. Its obligation is to show that the policyholder's interpretation is wholly unreasonable. And the reason why I bring that up is because if you look at the timeline as to what happened after the trial court issued its decision, meeting that burden, finding that the trial court's interpretation is unreasonable, seems to be a bridge too far. The trial court's decision was rendered February 26, 2018. About eight months later, the Sixth Circuit Court of Appeals rules that Kentucky, which has a statute virtually identical to Illinois, that Kentucky cannot depreciate labor under State Farm's exact policy. What does the Sixth Circuit cite? It cites the trial court's decision in this case. Six months later, the Hicks decision is cited by a unanimous and very conservative Tennessee Supreme Court in a 5-0 unanimous decision in a state that has a regulation again virtually identical to Kentucky and Illinois and holds that yes, you cannot, this policy is ambiguous. And the ambiguity at issue as found by the trial court, as found by the Sixth Circuit, as found by the Tennessee Supreme Court, is the word depreciation. They were saying that this is limited to physical deterioration. And so we have – So, Mr. Snodgrass, again, I'm going to ask you the same question I asked Mr. Kinsella, is how do we reach all of this under the way this question is framed? I mean, we're just being asked, is actual cash value include XYZ? I mean, I'm having a little trouble with the way the question is phrased. And I'm not, because it wasn't briefed, I'm not an expert on Rule 308. My plea would obviously be, given the delays in this case, that the court reach the merits of the question and if it can restructure the question in a manner that it seems acceptable, that's fine. The last thing I think either party would want is to go back and bounce up and down again and rebrief this. So you acknowledge that under 308 we can reach the merits as you've asked, but perhaps restructure the question. If you can restructure the question, I am sure that both sides would be delighted. And that's what we would ask. And so if you step back and think about it, to prove that the trial court's interpretation, the policyholder's interpretation is unreasonable, you really have to find that the Chief Judge's opinion was unreasonable. You have to find two Sixth Circuit judges, their interpretation was unreasonable. And you have to find five Tennessee Supreme Court justices, their opinion was unreasonable. And that's just looking since the Spruill decision was handed down. If you go back, this is actually the second time a trial court has ruled on this same policy, on this same issue. Judge Kathleen Kennedy of Cook County, this is in the record, she ruled that this policy does not allow labor depreciation. And I want to get to the answer. Sure. Just on common sense, let's say take a loss that involved a paint job. Okay. And the materials would be basically paint. Correct. And most of the job would probably be labor. So your position would be, even though it might be a very expensive job to repair, that labor could still not be depreciated. Right. And you were getting into the exact issue of indemnity. I mean, the policyholder is not buying coverage to put new paint in the policyholder's garage. When that paint was destroyed, it was already on the wall. Somebody had spent all the money to get it on the wall, just as the policyholder wanted it. And State Farm's obligation under an ACB policy is to put the policyholder back in the same condition he or she was before the loss. Now, don't confuse RCB. RCB is the only coverage that gets you a better, you're in a better position than you were after a loss. In other words, if you have an RCB policy and you have a loss, it's one of the few coverages available anywhere that says you get to be now in a better position because you get all brand new materials and you get the full labor. ACB, though, don't knock ACB because obviously there's a lot of coverages and a lot of policyholders that only get ACB and need it because, for whatever reason, the insurance companies won't underwrite RCB. So if somebody gets a hole punched in their roof, and it's usually, ACB-only policies are usually in poor areas, somebody, a tree falls through their roof, they need to get put back in the same condition. They need that roof back over their head. If you depreciate and withhold labor, you can't get there because not only does the policyholder have to come out of pocket for whatever the deterioration of the shingles was, but now we're also withholding labor. And you can't repair the roof. You can't put the policyholder back in the position he or she was in before the loss. And the reason why what State Farm's doing here is unfair to us, it relates to this replacement cost less depreciation methodology. That is the best methodology for policyholders that's available. The two competing standards, fair market value and broad evidence rule, the insurance company gets to take anything that the insurance company wants and consider and add it to lower the cost. And this is a decision that wasn't cited by either party. It's Kerry versus... Whoa, whoa, whoa, whoa. You're now referring to a decision that's not been cited by either party. It was cited by one of the amici, the insurance amici. And it's in the record, and everybody's had a chance to see it? Yes, it was cited by the amici, the insurance industry amici. It's Kerry versus American Family, 391 Hill Ave., 3rd, 273. And there the court said, Illinois courts have rejected both the market value and the broad evidence rule tests instead of applying the aforementioned replacement cost less depreciation test. Now, why that's important is that State Farm is trying to expand the definition of depreciation so broadly that it turns Illinois back into a broad evidence state. And the Third Circuit, in a case we cited in our brief called Dickler versus Cigna, addressed this very issue where an insurance company is trying to define something so broadly that you're changing and you're not even using replacement cost less depreciation theory. Dickler says, Commentators have also consistently distinguished the broad evidence rule from the replacement cost less depreciation rule. Judicial decisions and scholarly commentators such as these would make no sense if the term depreciation subsumed within it the very factors taken into account under the broad evidence rule. Rather, we hold that in the present context, depreciation is properly defined as physical deterioration. That's exactly what the trial court did here. That's exactly what the Sixth Circuit did. That's exactly what the Tennessee Supreme Court did. Depreciation is physical deterioration. The amici United Policyholders cited Appelman's in its insurance treatise. For those of you that grew up, like I did, in the insurance world, it's a very neutral insurance treatise. And the quote out of Appelman's is, There are multiple definitions of depreciation out there, but the principal definition is physical deterioration. So, really, what's in fact... I have one more question while you're talking about case law. You referenced the case in Cook County. Yes. Is there an appeal pending on this specific issue that we may bump into in the rendered decision? No. So I brought that case, the one in Cook County. It was the same case. The trial judge said, You didn't bring your case within the suit limitation clause. Well, first he says, You have a good case because you can't depreciate labor, but you didn't bring it in time for the suit limitation clause. It goes up on appeal, and the court of appeals does not disturb or address the labor depreciation issue, but pours out the suit on the suit limitations clause defense. The suit limitation clause is that clause of the policy that says, You don't have whatever your contractual statute of limitation is, but you only get one year to file suit. Right. So we have Judge Kennedy's order up in Cook, but nobody's moved for a 308 finding on that order in Cook County. That case has been over since 2017. So the court of appeals... Done. Done. The court of appeals... So that case no longer is existing? Exactly. Exactly. Voluntarily dismissed it? No. We appealed it and lost it at the court of appeals. We did not appeal it to the Supreme Court. Okay. I'm sorry. Okay. So there's going to be no... So when you sign to her opinion, I mean, it's in the case that's gone, and it's a trial court. Correct. No doubt. I just want to be clear on that. Yeah. And certainly no one's saying that Judge Kennedy's binding on this court, the chief judge is binding on this court, the Sixth Circuit's binding on the court, the Tennessee Supreme Court. No one's saying that these courts are binding. But if the standard is only is there a reasonable policyholder interpretation, the body of jurists at least have to be considered at some point. Well, what about Mr. Pensillo's reliance on Paparello? Paparello is a district court decision out of Pennsylvania with an extremely scant analysis and doesn't really address any of the issues of the Sixth Circuit and the Tennessee Supreme Court, and some of these later decisions start to get into it and say, okay, what is the methodology we're dealing with? Are we dealing with replacement costs, less depreciation? What's the definition of depreciation? Okay. Well, then how about Redcorn and Wilcox? Perfect. Redcorn and Wilcox. Please read those decisions. Please read those majority decisions and look how many times they're referencing the broad evidence rule for finding that anything, including labor appreciation, can be taken into consideration. It's the very thing I was warning about. When you're dealing with replacement costs, less depreciation, it's not a free-for-all like it is with the broad evidence rule. And those courts, those decisions, hung their hat hard on the broad evidence rule. In fact, in State Farm, we cited it in one of our footnotes. The State Farm's arguments are available on Westlaw and Wilcox. They argued hard that the reason why they could depreciate labor in those jurisdictions was because those were broad evidence rule jurisdictions. Illinois has rejected that rule. And so that's why those decisions don't matter. And, in fact, that's exactly what the HIC said. You know, State Farm, you're relying on all these cases from broad evidence and fair market value states. That's not what we're dealing with. We're dealing with this regulatory framework. And if you do compare, and they're all cited, I think 32 and 33 of our brief, if you do compare the regulation in Kentucky, the regulation in Illinois, the regulation in Tennessee, they're virtually identical, with one exception, and Your Honor is correct. The regulation in Illinois has language about showing worksheets where it's clear that the regulators are talking about depreciation applying to tangible stuff. It says, you know, show your deductions for wear and tear and age and use. They're not saying show your deductions for the hourly labor rate, show your deductions for the number of hours worked that would need to fix this. There's no such reference to that. It's reference property. So what I'm getting at, that sentence clearly shows, and it's consistent with replacement cost, less depreciation, meaning physical depreciation. So if replacement cost is the best you can buy, then the term actual cash value is the best you can buy minus depreciation. Correct, correct. That's the theory. And so in partial loss cases, what are you trying to do with this replacement cost less depreciation methodology? And what you're trying to do is put the policyholder back in the same condition he or she was in before the loss. And you can't do that if you not only make the policyholder come out of pocket for whatever the depreciation on the materials is, and that's fair game, then the policyholder has to also come out of pocket for some random percentage of the labor to do that. It's unfair. Those shingles were in place when the casualty hit. The policyholder should have the labor to put them back in place. That's how you get the policyholder. That's what you need to get the policyholder back to square one. So when we look at this, it's your contention that we look at it from the point of view of the policyholder. When they bought, when that person bought this policy to ensure their property, the question is what would they reasonably believe the term property to include? Right. And so Tennessee Supreme Court said a reasonable policyholder would believe that depreciation meant physical deterioration. But I mean, when they buy the policy, assuming they agree to it, there is no definition of actual cash value. Not in their policy, but now, and that's an important thing, most policy forms do address this issue. Most policy forms will even say, okay, we're not going to depreciate below $5,000, but we will, and we're going to depreciate. We could depreciate this, this overhead and profit. We can depreciate labor. They get into it. This policy is silent. Now, State Farm's changed. State Farm's changed now, and I think this case only deals with about a couple, three years, because I think they introduced their form in 2015, and based on renewals and suit limitation clauses, I think by early 2017 at the latest, there's no more class members, if you can understand what I'm saying. So State Farm finally joined the rest of the industry. I think what State Farm was doing is they kind of wanted the best of both worlds. They didn't want to put in their policy and alert people that, hey, this insurance is weak. This is weak ACV insurance you're buying. They didn't want to put that in the policy because they might lose market share on that. So they wanted the best of both worlds. They wanted to sell weak insurance without telling the people and then save on the claims. When the right thing to do was, and what their competitors were doing, either they don't depreciate labor, about half the carriers don't even depreciate labor, or if they do, put it in your policy so that the policyholder knows what he or she is buying. That's what this issue is. We're dealing with a really unique third category. We're not dealing with the carriers that happen that don't even do this. We're not dealing with those that do it but tell the policyholder the policy. We're dealing with the unique third category, the carrier that doesn't want to tell you and is still going to do it anyways. And we're only dealing with a three-year window. So this is a pretty unique thing. And Mr. Consilla talked about, well, you know, there's a rash and a flood of lawsuits. This is the only case in Illinois. And trust me because we look and we check folks in my line of work. It is very difficult to find, and it's good news, it's very difficult to find any carriers operating in this space, in this third space, that third space being they do this, they withhold labor, and they don't tell you about it in the policy. There's a reference in our, and again, I don't know your respective insurance experiences, but there's a company called National Underwriters, and it's published under the fire category of the insurance company. And their bulletin from 2015, and it's an insurance industry entity, their bulletin from 2015 was, you can do it only if it's in your policy. And that's really the position that we have here. We're not fighting, we're not trying to include in the class the folks that had labor depreciation after State Farm, you know, joined the rest of the industry and, you know, pulled people while they were buying. This is just the folks that had labor withheld under policies that were signed. I wanted to push back a little bit about, you know, any notion that this is something that's gone on, that this is a new wave of class actions. The first court that we saw that says you can't depreciate labor is a Supreme Court, South Carolina Supreme Court decision dating back to 1961. And that's in our brief, and we also see it in 1978 Mississippi decision. So this notion about not depreciating labor was something that's been around a long time. When Xactimate came out, you're right, you couldn't even depreciate labor initially, but when they finally did it, yes, the default setting, the way that the program works, if you don't go in to manipulate the settings, is it does not depreciate labor. In fact, you can't buy any of the software platforms, there's about five or six of them, you can't buy any claims estimating software that will give you both options, insurance company both options, to do it or not to do it. So it's a dispute. You mean you can't buy it. Obviously there was one. Yeah, no, you can buy it. Every one that you buy gives you that option now today. In other words, that's because half are doing it, half are not. But that just gives you some predominance or commonality for your class action software. Well, correct. It's a fix, but putting that aside, the reason I bring it up is everybody knows about it. It's been around for years. State Farm had a class action in 2002, and it was a 4-3 split at the Oklahoma Supreme Court. So, yes, they made the decision, affirmative decision, we're not going to put this in our policy, we'll risk it. And that's kind of the unfairness. So was that the Redcorn case? That was the Redcorn case, yes. In 2002. Yes. Thank you. Thank you, Your Honor. I want to try to get to as many of these points as possible. The lineup of these cases, the majority rule is clearly supportive of the view that labor depreciation may appropriately be depreciated. We've cited those cases in our paper. When you say the majority, are we now weighing one case against the other? No. I'm not counting the justices that sit on different courts, for example. But I'm just letting you know what the majority rule is. The notion that if there's competing opinions coming out of different courts, that that somehow reflects multiple reasonable interpretations that must be interpreted against the insurance company, that's just not Illinois. That's just not Illinois law. I mean, the Alport Marine case, for example, which has been cited by both plaintiffs and defendants there, the Supreme Court surveyed law elsewhere and reached its own de novo determination based on its reading of the policy. That's the obligation before the court, not to simply assess, hey, there's competing views. They must be reasonable because there's a jurist in these different locations. We address this very argument in our reply brief that that's simply not the standard. Nor is contra preferendum the appropriate tool, the appropriate construction tool for assessing a regulation. That's not the standard that a court follows. One looks to the intent of the regulators. State Farm didn't draft the regulation. One gives meaning to the words in the regulation or in the case law. And so that notion of trying to create an ambiguity in that way is without merit. I do want to address this notion of poor folks being unable to make repairs because that's not accurate. It's not an out-of-pocket need. Actual cash value is, as a Henn case suggests, a Nebraska Supreme Court case, actual cash value is the approach to get the seed money, the start money, you know, to repair a roof or whatever the damaged property is. Whenever has anyone paid the contractor, here's all the money, you know, for the replacement costs and gone out of pocket. You pay enough to get it started, and when they deliver the goods, you know, then you pay the remainder. Now, the nature of this replacement. Who pays the remainder? Pardon me? Who pays the remainder? The insurer. State Farm pays the remainder. After the job is done, you're suggesting that even though it doesn't include the full cost of labor initially, once you make that initial payment, the contractor comes in, finishes the job, and then State Farm provides the remainder of what's there. Absolutely. Every homeowner policy. Under what theory? Under the replacement cost or the actual cash value? Under replacement cost. That's what you provide. Replacement cost, but not under actual cash value. But all these policies are two-step policies. They don't sit in a vacuum of ACB. The homeowner policy in Illinois that State Farm has is a two-step policy. I understand. But if you don't have the money to put out to begin the process because you don't have sufficient funds, you can't start the replacement cost value. You have the ACB. Exactly. And that gives you the rule. Excuse me. I'm sorry. Justice Barberos was asking you that. Somebody has to put the money out front, and when you say this isn't about people who can't do that, isn't that exactly what this is about? If you want the two-step process, you have a choice. Either you have the money, and you can start the process, or you don't have the money. So you can't. I mean, some people go with wind damage because they can't fix it if you depreciate the labor. Well. Right? I mean, couldn't you conceive of that notion? So I can't because I think the ACB money is sufficient to trigger the repairs. And secondly, as is in the record, and as was attached to the complaint, is the State Farm practice, which specifically is you bring in a signed contract, you get repairs substantially underway, we'll pay the replacement cost benefits, don't even have to wait until all the repairs are completed. That's a part of the pleadings in this case. The key to your statement was you, meaning the homeowner, gets the repairs substantially underway. That burden is on the individual who suffered the loss. Yes. They've got to have the money. Yes. And it's a question of whether ACB is sufficient seed money, start money, to do so. Under the case law, it is. By the way, Carrie was cited by us as standing for the proposition of what ACB is, replacement cost minus depreciation, where the two-step process in Carrie was deemed to be unambiguous. Thank you. I know your time is up. Let me ask one question just for clarification. With regard to the ACB being assessed and a claim is made, loss is sustained, claim is made, State Farm comes in, gets an ACB of $5,000, and you're suggesting that that payment of $5,000 would go to the person who lost that money, the insurer, who then contacts a contractor to come in and start, and the contractor finishes the job, and it's $7,000. That contractor gives to State Farm, hey, here's the finished repair, and State Farm would pay that additional amount. Yes, State Farm would pay that additional amount to the policyholder even before the repairs were completed under its practices. But yes, so the additional $2,000 would be paid in that manner. Wait, wait. I'm not sure I understand that answer. So Justice Barbera has asked you that loss is incurred, and State Farm comes in first and determines that the actual cash value due is $5,000, and the $5,000 is put onto the home. Are you now saying that if it was $7,000 under the ACB theory, that additional $2,000 would be paid? Yes, the additional $2,000 would be paid when the signed contract was provided even before the replacement cost payment was due. I said under the actual cash value theory. It would be paid before the repairs were completed. It would be paid before. So where's the depreciation of the actual cash value? I don't understand your answer. It seems to me like you're saying to Justice Barbera that 100 percent is paid. No, 100 percent of the loss is paid. It is in two steps. It comes as actual cash value first, and the second payment is provided even before repairs are completed under State Farm's practices. So I guess that leads me to the question, how many people bring lawsuits against an insurance company, and State Farm in particular, for a job that they completely paid for? Well, I'm unaware of any lawsuits where State Farm has completely paid for the repair that the insured has stepped up to file the lawsuit. So it's only in those cases where at the end of the conclusion of the repairs, there's money that State Farm didn't pay that the insured felt should have been paid. Yeah, and in this instance – excuse me, I need a little liquid. In this instance, plaintiffs don't even want to consider the repair aspect of things or whether the person ultimately got everything that they could have gotten for repairs. They only want to consider whether that initial payment applied to depreciation more broadly than, you know, and whether it applied depreciation to the full replacement cost. Thank you. Okay, Mr. Consola, thank you. Thank you. All right, that concludes the argument on 518-0577. The matter will be taken under advisement, and we will issue a new court order.